No. 14-56305

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

TRAVIS GONZALES, an individual
Plaintiff-Appellee,

v.

CARMAX AUTO SUPERSTORES CALIFORNIA, LLC, a Virginia Limited
Liability Company; SANTANDER CONSUMER USA, INC., an Illinois
Corporation; SAFECO INSURANCE COMPANY OF AMERICA, a New
Hampshire Corporation,
Defendants-Appellants.

_____

Appeal from an Order of the
United States District Court for the Central District of California
No. 8:13-cv-01391-CJC-RNB (Honorable Cormac J. Carney)
_____

**APPELLEE'S ANSWERING BRIEF**

_____

Hallen D. Rosner, SBN 109740
ROSNER, BARRY & BABBITT, LLP
10085 Carroll Canyon Road, Suite 100
San Diego, California 92131
(858) 348-1005
hal@rbblawgroup.com

1

## TABLE OF CONTENTS

INTRODUCTION ........................................................................7

ISSUES PRESENTED...............................................................13

STATEMENT OF CASE ...........................................................14

    A. General Background....................................................14

    B. The Original and First Amended Complaints .................15

    C. The District Court's Order to Show Cause ...................19

    D. The Parties' Rule 26 Initial Disclosures........................19

    E. The Second Amended Complaint..................................20

    F. Mr. Gonzales's Truthful and Accurate Discovery Responses .......................23

    G. The Motion for Summary Judgment ..............................24

    H. The District Court Properly Denied Appellants' Motion for Fees.................26

STANDARDS OF REVIEW ......................................................27

    A. The District Court's Factual Finding Mr. Gonzales Prosecuted His Case with Subjective Good Faith ..........................................................27

    B. The District Court's Denial of Appellants' Fee Motion ...............................27

    C. The District Court's Determination of Subject Matter Jurisdiction...............28

ARGUMENTS ..........................................................................28

    A. The District Court Lacked Subject-Matter Jurisdiction .................................28

    B. The District Court's Finding Mr. Gonzales Prosecuted the Case with Subjective Good Faith was Not Erroneous ........................................................33

      1. Mr. Gonzales Did Not Purposefully Deceive the Court to Pass the Pleadings Stage: An SAC with Accurate Facts Would Have Survived a Motion to Dismiss .........................................................35

      2. Appellants Repeatedly Misstate the Basis of Mr. Gonzales's Opposition to the Motion for Summary Judgment ..............................................37

    C. Even Upon a Factual Finding of Subjective Bad Faith, the District Court Had the Discretion to Deny Appellants' Fee Motion..........................................40

D.  The District Court Provided Sufficient Justification for Denying Appellants' Motion for Attorney's Fees ............................................................43

E.  This Appeal Will be Mooted by Mr. Gonzales's Appeal on the Merits .......44

CONCLUSION ...............................................................................................44

CERTIFICATE OF COMPLIANCE ......................................................................46

# TABLE OF AUTHORITIES

## Cases

*580 Folsom Assocs. v. Prometheus Dev. Co.*,
   223 Cal.App.3d 1 (1990) .................................................................... 41, 42

*Am. Dental Indus., Inc. v. EAX Worldwide, Inc.*,
   228 F. Supp. 2d 1155 (D. Or. 2002) ..................................................29

*Arbaugh v. Y& H Corp.*,
   546 U.S. 500 (2006) ...........................................................................28

*Berkla v. Corel Corp.*,
   302 F.3d 909 (9th Cir. 2002) ..............................................................27

*Brooks v. CarMax Auto Superstores California, LLC*,
   Case No. 37-2012-00097107 ................................................ 9, 10, 15, 19

*Burk v. Med. Sav. Ins. Co.*,
   348 F. Supp. 2d 1063 (D. Ariz. 2004) ...............................................31

*California ex rel. Sacramento Metropolitan
   Air Quality Management Dist. v. U.S.*,
   215 F.3d 1005 (9th Cir. 2000) ............................................................28

*Carroll v. State of California*,
   217 Cal.App.3d 134 (1990) ............................................................1, 33

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers
   Pension Trust for S. Cal.*,
   508 U.S. 602 (1993) ...................................................................... 11, 27

*Corbett v. Hayward Dodge, Inc.*,
   119 Cal.App.4th 915 (2004) ....................................... 33, 39, 41, 42

*Efron v. Kalmanovitz*,
   246 Cal.App.2d 187 (1967) ................................................................33

*Ferland v. Conrad Credit Corp.*,
   244 F.3d 1145 (9th Cir. 2001) ............................................................27

*Galvez v. Kuhn*,
   933 F.2d 773 n. 4 (9th Cir. 1991) .......................................................28

*Geller v. Hai Ngoc Duong*,
   No. 10-CV-1876, 2010 WL 5089018, at *2 (S.D. Cal. Dec. 7, 2010)................31

*Gomez v. CarMax Auto Superstores California, LLC*,
   No. 14-Vd-09019, slip op. at 3 (C.D. Cal. Apr. 30, 2015).............. 29, 30, 31, 32

*Holt v. Kormann*,
    2012 WL 5829864 at *7 (C.D. Cal. Nov. 15, 2012) ..........................................34

*Husain v. Olympic Airways*,
    316 F3d 829 (9th Cir. 2002) ...............................................................27

*Jeff D. v. Otter*,
    643 F.3f 278 (9th Cir. 2011) ...............................................................28

*Knight v. City of Capitola*,
    4 Cal.App.4th 918 (1992) ...................................................................33

*Kode v. Carlson*,
    596 F.3d 608 (9th Cir. 2010) ...............................................................28

*Kona Enterprises, Inc., v. Estate of Bishop*,
    229 F.3d 877 (9th Cir. 2000) ..........................................................27, 28

*Lange v. State Farm Mut. Auto Ins. Co.*,
    No. 08-CV-1466, 2009 WL 322835, at *1 (C.D. Cal. Feb. 9, 2009)..................31

*Lee v. CarMax Auto Superstores California, LLC,* No. 13-CV-7648,
    slip. Op at 2 (C.D. Cal. Apr. 27, 2014). ...............................14, 29, 30

*Matheson v. Progressive Speciality Ins. Co.*,
    319 F.3d 1089 (9th Cir. 2003) .............................................................30

*McCorkindale v. Am. Home Assurance Co.*,
    909 F. Supp. 646 (N.D. Iowa 1995) .....................................................31

*Menefee v. CarMax Auto Superstores California, et al.*,
    (2011) Case No. SVC 25824 ........................................8, 9, 14, 22

*Mueller v. Macban*,
    62 Cal.App.3d 258 (1976) ..................................................................33

*Nguyen v. Hartford Cas. Ins. Co.*,
    No. 06-CV-2541, 2007 WL 2206903, at *3 (D. Ariz. July 30, 2007) ...............31

*People v Nunn*,
    46 Cal.2d 460 (1956) .........................................................................33

*Perez v. CarMax Auto Superstores California, LLC*,
    No. 13-CV-2886, 2014 WL 338838, at *2 (S.D. Cal. Jan. 28, 2014).........30, 32

*Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*,
    508 U.S. 602 (1993) ....................................................................11, 27

*Purcell v. Gonzales*,
    549 U.S. 1, 5 (2006) ..........................................................................27

*Reames v. AB Car Rental Services, Inc.*,
    899 F. Supp. 2d 1012 (D. Or. 2012)......................................................30

5

*Salang v.CarMax Auto Superstores, LLC*,
   No. 13-CV-870, 2014 WL 334466, at *2 (S.D. Cal. Jan. 28, 2014) ............ 30, 32

*Sheldon Co v. Albert & Oliker*,
   47 Cal.3d 863 (1989) ................................................................................ 40, 41

*Simeonoff v. Hiner*,
   249 F.3d 883 (9th Cir. 2001) .................................................................. 27

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*,
   303 U.S. 283 (1938) ............................................................................... 29

*Stelzer v. CarMax Auto Superstores Cal., LLC*,
   No. 13-CV-1788, 2013 WL 6795615, at *6 (S.D. Cal. Dec 20, 2013) ........ 30, 32

*Summers v. City of Cathedral*,
   225 Cal.App.3d 1047 (1990) .................................................................. 33

*Thomas v. Standard Ins. Co.*,
   No. 09-CV-02121, 2010 WL 994507, at *3 (D. Ariz. Mar. 17, 2010) ...............31

*United States v. Elliott*,
   322 F.3d 710 (9th Cir. 2003) ......................................................... 1, 17, 27, 28

*Wastier v. Schwan's Consumer Brands*,
   No. 07-CV-1594, 2007 WL 4277552, at *3 (S.D. Cal. Dec. 5, 2007) ................30

## Statutes

28 U.S.C. § 1331 ............................................................................................28
28 U.S.C. § 1332 ...................................................................................... 13, 28
California Civil Code §1780(e) ................................................................. 12, 40
California Code of Civil Procedure § 128.5 ...................................................41
California Code of Civil Procedure § 128.5(b)(2) .........................................41
Federal Rules of Civil Procedure § 52(a)(6) ................................................27
Vehicle Code § 11713.18(a)(6) .....................................................................26

## INTRODUCTION

The district court properly found Appellee Travis Gonzales ("Mr. Gonzales") prosecuted his Consumers Legal Remedies Act ("CLRA") cause of action with subjective good faith and denied Appellants CarMax Auto Superstores California, LLC ("CarMax") and Santander Consumer USA, Inc.'s ("Santander") motion for post-judgment attorney's fees pursuant to Civil Code section 1780, subdivision (d) after summary judgment was granted in their favor.[1] Because this factual finding was plausible in light of the entire record, and because the district court had the discretion to deny attorney's fees even upon a finding of bad faith, this Court must affirm the district court's Order and deny Appellants' unmeritorious appeal.

Mr. Gonzales purchased a used vehicle which CarMax advertised as being "certified." Pursuant to California Vehicle Code section 11713.18, to sell or advertise a vehicle as "certified," a dealer must, "prior to sale," provide the consumer with a "completed inspection report indicating all the components inspected." CarMax did not comply with this requirement. Instead of providing Mr. Gonzales with a completed inspection report which indicated all the components inspected, it gave him a generic, non-vehicle-specific, advertisement for CarMax's purportedly "rigorous" inspection.

Every vehicle CarMax sells is advertised and sold as being "certified." CarMax advertises its vehicles undergo a "rigorous" pre-sale certification inspection. This inspection is documented on a multi-page form called a CQI/VQI

---

[1] Civil Code section 1780, subdivision (e) provides: "The Court _shall_ award attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section. Reasonable attorney's fees _may_ be awarded to a prevailing defendant upon a finding by the court that the plaintiff's prosecution of the action was not in good faith" (emphasis added).

7

checklist or CQI/VQI inspection report. The CQI/VQI inspection report indicates all the components inspected on the vehicle, and also indicates the results of the inspection. The document allows the certifying technician to indicate what parts listed on the form were inspected, and those which were not inspected because they are not present on a particular vehicle. In addition, the technician indicates whether a particular component passed or failed the inspection by checking the corresponding box.

Instead of providing consumers (including Mr. Gonzales) with a copy of the CQI/VQI inspection report in accordance with Vehicle Code section 11713.18, CarMax's policy is to destroy the CQI/VQI inspection report. In its place, CarMax provides consumers with a generic advertisement for the inspection which might have occurred (hereinafter the "two-sided CQI certificate"). CarMax contends the two-sided CQI certificate is a completed inspection report pursuant to the Vehicle Code. The two-sided CQI certificate completed inspection report is not vehicle specific; it lists items which are not component parts found on any vehicle; and lists component parts not found on the vehicle for which it purports to be the inspection report. Per CarMax corporate policy, this two-sided CQI certificate is placed in the vehicle's glovebox. It is not provided to customers "prior to sale." The face of the two-sided CQI certificate admits it does not list all the components inspected on a vehicle: ("We check over 125 points including (but not limited to):").

Following a full bench trial on the merits in *Menefee v. CarMax Auto Superstores California, et al.*, Case No. SVC 25824, filed in Placer County Superior Court, a California trial court held the two-sided CQI certificate does not comply with Vehicle Code section 11713.18 and all vehicles sold by CarMax in California are sold illegally. CarMax appealed the decision, and the case is awaiting oral argument in the California Court of Appeal. Mr. Gonzales's counsel

8

in the instant matter is the lead appellate counsel in *Menefee*. After the trial court's decision in *Menefee*, Mr. Gonzales's counsel instituted numerous actions against CarMax for its continued use of the noncompliant two-sided CQI certificate.

Prior to commencement of the instant underlying litigation, on September 9, 2013, Appellee's counsel deposed Vaughn Sigmon, CarMax's Regional Vice President General Manager, in the matter of *Brooks v. CarMax Auto Superstores California, LLC,* Case No. 37-2012-00097107, filed in San Diego County Superior Court. Mr. Sigmon was designated as the top CarMax officer in California. In the deposition, Mr. Sigmon stated CarMax had amended its policy such that in addition to placing a copy of the two-sided CQI certificate in the vehicle's glovebox, it was also provided to consumers when signing the paperwork to purchase the vehicle.

During the course of this litigation, Appellee and his counsel became aware that following the decision in *Menefe*e, CarMax's amended policy was not, as Mr. Sigmon testified, to provide a second copy of the two-sided CQI certificate. Instead, CarMax's amended policy is to provide a different, even less vehicle-specific, advertisement (hereinafter the "one-sided CQI certificate") in addition to placing the two-sided CQI certificate in the glovebox. The one-sided CQI certificate is provided to consumers in the stack of papers they receive *after* the sales contract has been executed. Apparently CarMax did not tell their own attorneys about this change (or its attorneys intentionally withheld the documents), as CarMax never produced the email/memo which informed CarMax employees of this new policy, nor did it produce a copy of the one-sided CQI certificate in its Rule 26 disclosures for the instant case. (It similarly failed to disclose the two-sided certificate for Mr. Gonzales's vehicle.)

The one-sided CQI certificate is even less vehicle specific than the two-sided CQI certificate: it does not include the vehicle stock number or a signature of the

9

employee who allegedly inspected the vehicle. The one-sided CQI certificate is so meaningless a document Mr. Gonzales did not realize it was the purported "completed inspection report" for his vehicle.

Mr. Gonzales and his attorneys admittedly did not plead the existence of the one-page CQI certificate, or Mr. Gonzales's receipt of it, when drafting the Second Amended Complaint ("SAC"). However, it was an honest mistake based, in part, on counsel's misunderstanding of Mr. Sigmon's not-entirely-correct deposition testimony in *Brooks,* which was compounded by the incomplete discovery responses provided by Appellants in the instant case. The error by Mr. Gonzales and his counsel was not a bad faith attempt to continue an unmeritorious claim. At worst, it is an example of a failure on part of Mr. Gonzales's counsel to double-check the produced documents against Mr. Gonzales's stated memory of the transaction, and to realize CarMax had given incorrect and incomplete discovery. Mr. Gonzales prosecuted the action with full belief he was advancing a meritorious claim, and still maintains such a belief today.[2]

After the confusion over the new policy and the one-sided CQI certificate was resolved, Mr. Gonzales opposed Appellants' motion for summary judgment based on the truthful and complete answers and admissions made during the discovery phase. All assertions made by Appellants to the contrary are false and without merit.

Appellants claim the issue on appeal is a simple one – and it is. They just mis-identify the issue. Appellants' framing of the issue reveals a fundamental misunderstanding of the proper standards of review on appeal, as well as the

---

[2] Mr. Gonzales has appealed the district court's order granting summary judgment in favor of Appellants and well as the district court's holdings contained in the motions to dismiss. *Gonzales v. CarMax Auto Superstors California, LLC, et al.*, Case No. 14-56842 (9th Cir.).

discretion allotted to a lower court ruling on fee motions brought under the CLRA by prevailing defendants.

The issue is not whether Appellants "presented sufficient evidence that [the underlying case] was not prosecuted in good faith." AOB at 2. Instead, the issue is whether the district court made a reasonable inference when it found Mr. Gonzales prosecuted his case in good faith. Appellants' framing of the issues make an implicit, and legally inaccurate, claim this Court may substitute its own judgment and inferences for those of the district court. Unless this Court has a "definite and firm conviction" a mistake has been committed, it may not so substitute its own inferences. *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993). Thus, even if Appellants presented substantial evidence to support a finding the lawsuit was not prosecuted in good faith, such presentation is irrelevant at this stage unless this Court finds the district court's finding was implausible in light of the entire record, and no reasonable judge could have agreed with the district court's factual determination the case was prosecuted with subjective good faith.

Moreover, even assuming this Court finds the factual finding of the district court clearly erroneous (it was not), this Court may not remand to the district court with an instruction to award fees. Under the CLRA fees *may* be awarded to a prevailing defendant upon a finding the action was not prosecuted in good faith. There is a "double-discretion" awarded to a trial court ruling on such a motion: (1) the discretion to draw inferences and make a factual finding which is plausible in light of the entire record; and (2) the discretion to decline to award fees following a finding of subjective bad faith. Unlike with a prevailing plaintiff, there is no requirement, even upon a finding of subjective bad faith, that a trial court *must* award such fees; even if the lower court finds a CLRA action was prosecuted with subjective bad faith, it is still within its sound discretion to deny a

11

prevailing defendant's fee motion. See Cal. Civ. Code §1780(e). Accordingly, even if this Court finds the district court committed clear error when it found Appellee prosecuted his case in good faith, the district court was still entitled to exercise its discretion to deny Appellants' motion for attorney's fees. Simply put, Appellants ultimately seek from this Court that which it cannot give: a ruling they are entitled to attorney's fees under the CLRA and an order directing the district court to grant them.

Ironically, in their unmeritorious attempt to receive that to which they are not entitled, and while complaining Mr. Gonzales acted without good faith in the prosecution of his case, Appellants distort the record and make gross misstatements of fact to this Court. Appellants continually misstate contents of meet-and-confer letters to Mr. Gonzales's counsel, seeking to create the impression such letters contain any reference whatsoever to the error in pleading which takes center stage in Appellants' briefing. Further, Appellants base their motion upon their oft-repeated, and factually devoid, position Mr. Gonzales relied upon false facts in opposing the motion for summary judgment. This Court will find the record lacks support for many of the factual allegations which form the foundation of Appellants' argument.

This appeal is little more than a litigation tactic designed to drag the good name of Mr. Gonzales's counsel through the mud and sully their reputation with this Court ahead of the numerous pending appeals on the merits regarding CarMax's willful noncompliance with Vehicle Code section 11713.18. Further, the appeal is designed to punish Appellee for fully prosecuting his case by making him accrue additional legal fees to defend against this meritless appeal. Appellants desire to wage a war of attrition against Appellee and, in particular, his counsel who have numerous similar cases pending against CarMax. This tactic of delay stands in stark disregard to the consumer-friendly nature of the CLRA, which sets

a high bar for defendants seeking post-judgment fees. If this Court rules in favor of Appellants it risks creating a chilling effect on the ability of consumers to seek redress and advance new legal theories under the CLRA.

The district court did not commit clear error when it found Appellee prosecuted his case with subjective good faith. Moreover, even if the district court did err, it was still within its discretion to deny Appellants' motion for attorney's fees because under the CLRA –a consumer protection statute—because the award of fees to a prevailing defendant is *never* mandatory.

Further, there can be no bad faith prosecution here, as Mr. Gonzales's claims were, and still are, meritorious. Mr. Gonzales maintains a firm conviction he will ultimately prevail on his CLRA cause of action. As an appellate victory on the merits of the underlying case will moot the instant appeal, any decision should be stayed until the related appeal on the merits is heard by this Court.

Finally, the district court erred when it found the evidence presented by Appellants established the amount in controversy required to confer the district court with subject matter jurisdiction pursuant to 28 U.S.C § 1332.

## ISSUES PRESENTED

1.     Did the district court err when it held the amount in controversy necessary to confer subject matter jurisdiction under 28 U.S.C § 1332 was met based upon a combination of speculative amounts, including attorney fees calculated through trial, when the amount in controversy at the time of removal was only $27,209.42?

2.     Did the district court commit clear error when it found Appellee prosecuted his case in good faith? If so, did the district court abuse its discretion to deny Appellants' motion for attorney's fees when the fee-shifting statute dos not require, but only permits, the granting of such fees?

3.     If Appellee prevails on the merits in the related appeal, is the instant appeal moot because Appellants would no longer be the prevailing party?

## STATEMENT OF CASE

### A.     General Background

Mr. Gonzales's lead counsel, Hallen D. Rosner, has practiced consumer law for over thirty years. II ER 80.  He is a partner at Rosner, Barry & Babbitt, LLP, which has received the San Diego County Bar Association award for public service.  II ER 80.  In 2012, Mr. Rosner received the National Consumer Attorney of the Year award. II ER 80-81.  Mr. Rosner's firm accepts consumers' cases on a contingency basis; they are not paid if they do not prevail and thus have no incentive to accept and prosecute unmeritorious cases.  *See Id.*

Mr. Rosner's firm is lead appellate counsel in the case of *Menefee v. CarMax Auto Superstores California, LLC, et al*., originally filed in Placer County Superior Court.  The *Menefee* trial court held "the generic form used by CarMax did not constitute a 'completed inspection report' as required by section 11813.18(a)(6)." *See* Statement of Decision, IV ER 651.   Following the trial court's ruling, Mr. Rosner's firm began aggressively prosecuting claims against CarMax for their refusal to comply with Vehicle Code section 11713.18. Mr. Rosner's firm has initiated at least twenty-five actions against Appellant CarMax for its use of the generic two-sided CQI certificate.  II ER 82, ¶9.

On August 19, 2013, Mr. Rosner's firm filed the Complaint in *Lee v. CarMax Auto Superstores California, LLC*, in Los Angeles County Superior Court. II ER 47.  Attached to the Complaint as Exhibit 2 was a copy of the one-sided CQI certificate.  II ER 63.  In *Lee*, the plaintiff only received the one-sided CQI certificate.  See II ER 49, ¶12.  At the time that Complaint was filed, Mr. Rosner's firm was unaware of the CarMax policy change to provide this document in

addition to the two-sided CQI certificate due to CarMax's failure to make counsel aware of the change in policy or the existence of any additional documents purporting to be completed inspection reports. *See* II ER 83, ¶13.

On September 9, 2013, prior to commencement of the instant underlying litigation, Appellee's counsel deposed Vaughn Sigmon, CarMax's Regional Vice President General Manager, in the matter of *Brooks v. CarMax Auto Superstores California, LLC,* Case No. 37-2012-00097107, filed in San Diego County Superior Court. See II ER 81, ¶6. In the deposition, Mr. Sigmon testified CarMax changed its policy such that in addition to placing a copy of the two-sided CQI certificate in the vehicle's glovebox, it was also provided to consumers as part of the signing paperwork. Mr. Rosner spoke with Appellants' counsel, Kurt Schlichter, during this deposition and was informed Appellants' counsel was unaware of this policy change, which is why his office had not produced the document in discovery for the *Brooks* matter. II ER 81. As it turned out, the testimony of Mr. Sigmon was not entirely accurate. *See* II ER 8, ¶6.

**B.    The Original and First Amended Complaints**

On July 25, 2013, Mr. Gonzales filed the Complaint for the instant action in Orange County Superior Court. II ER 150. Three defendants were named: CarMax, Santander, and Safeco Insurance Company of America. *Id*. Among the causes of action asserted was a violation of the CLRA. *Id*.

On August 1, 2013, six days after filing the Complaint, Mr. Gonzales filed a First Amended Complaint ("FAC") in Orange County Superior Court. II ER 172. The FAC is identical to the Complaint in substance. *Compare* II ER 150-70 *with* II ER 172-92. The only change made to the FAC is the correction of a party's name in the caption. *Compare* II ER 150 *with* II ER 172.

15

Central to Mr. Gonzales's CLRA cause of action was the allegation CarMax violated Vehicle Code section 11713.18 when it advertised and sold him a 2007 Infiniti as a "certified" vehicle.  *See* II ER 175-79.

In both the Complaint and the FAC, Mr. Gonzales alleged "CarMax did not provide [him] with a 'completed inspection report indicating all components inspected' prior to sale, during the sale, or after the sale." II ER 154, ¶21; II ER 176, ¶ 21.  Mr. Gonzales claimed

> "CarMax called the vehicle 'certified' without providing a <u>completed inspection report</u> prior to sale, or at any time thereafter.  It is CarMax's stated corporate policy to provide a generic list of components – a 'CarMax Quality Inspected ("CQI") Certificate' – that were purportedly inspected, without disclosing the results of the inspection. A generic list is not a "completed inspection report."

II ER 154, ¶23, II ER 176, ¶23 (underline original).  This refers to the two-sided CQI certificate.  Mr. Gonzales did not explicitly allege whether he received a copy of the two-sided CQI certificate from CarMax. *See* II ER 172-83.

Mr. Gonzales further alleged he "didn't receive the CarMax Certified Quality Inspection ("CQI") checklist at any time." II ER 175, ¶18.  It was the contention of Mr. Gonzales the "CQI checklist" referred to in paragraph 18 of the FAC (herein referred to as the CQI/VQI checklist, *see supra*) is a document used by CarMax which would be compliant with Vehicle Code section 11713.18, and is the actual "completed report which indicates all the components inspected" on the vehicle, as required by Vehicle Code section 11713.18.  *See* II ER 175-77, ¶¶ 18, 24-27.  Mr. Gonzales alleged the CQI/VQI inspection report is destroyed by CarMax to conceal the results of its inspection of the vehicle.  II ER 176, ¶24.

On August 16, 2013, Appellants agreed to provide Appellee with a (later reneged upon) full correction under the CLRA[3].  II ER 285; *see also* II ER 293; II ER 312.

On September 6, 2013, Appellants removed the case to the United States District Court for the Central District of California.  Dkt. 1.

On September 9, 2013, Appellants' counsel sent a form-style meet-and-confer letter to Mr. Gonzales's counsel under the guise of being an "attempt to meet and confer … to avoid having to move to dismiss or strike." II ER 351.  In the letter, Appellants attempt to chastise Mr. Gonzales for not reflecting in the FAC Appellants' August 16 offer of correction—an offer sent two weeks after the FAC was filed—and for seeking damages under the CLRA in the FAC.  II ER 351. Appellants warned Appellee this inclusion of pled damages amounted to "bad faith" and they would seek to recover fees.  *Id.*

However, Mr. Gonzales did not seek such damages for CarMax's violation of the CLRA in either the Complaint or FAC. II ER 169-70;  II ER 191-92. Indeed, he specifically pleaded "no request for damages of any type are sought under the [CLRA] at this time." II ER 192.  Despite Appellants taking the time to draw the attention of this Court to this letter (presumably because it erroneously, and without any factual basis, accused Mr. Gonzales of acting in "bad faith"), *see* AOB at 12, its contents are wholly irrelevant to the instant proceeding, except, perhaps, to show Appellants are fond of, and have an established record of, accusing Mr. Gonzales of acting in bad faith when Appellants merely disagree about the merits of a claim. IV ER 351.

On September 13, 2013, a mere four days after sending the letter to "avoid having to move to dismiss and/or strike," Appellants filed a general motion to

---

[3] As the record reflects, Mr. Gonzales twice tried to accept this offer of correction, but to no avail. *See* IV ER 539.

dismiss all causes of action pursuant to FRCP 12(b)(6), alleging Mr. Gonzales failed to state a claim upon which relief may be granted. IV ER 694-699.

Mr. Gonzales opposed the motion. IV ER 665. In his Opposition, Mr. Gonzales stated he did not receive the CQI/VQI checklist/inspection report – the CarMax-produced document he argued was compliant with Vehicle Code section 11713.18. IV ER 672, 682. He argued the two-sided CQI certificate sometimes provided by CarMax was noncompliant with the Vehicle Code because (1) it did not list the results of the inspection; (2) listed items which are not vehicle component parts and thus could not have been inspected, such as "exhaust;" and (3) listed vehicle components which are not present on the subject 2007 Infiniti, and thus could not have been inspected, such as a manual transmission. IV ER 672:4-5, 680-82. The FAC and Opposition to the motion to dismiss are silent as to the one-sided CQI certificate because Mr. Gonzales did not know he had received the document and his counsel were generally unaware of CarMax's use of this generic advertisement. *See* IV ER 665-93.

On November 6, 2013, the district court granted Appellant's motion to dismiss, with leave to amend. I ER 15. The district court held "[n]othing in the plain, unambiguous language of section 11713.18 requires CarMax to disclose the 'results' of its inspections." I ER 20. However, the district court did not make an explicit finding that the two-sided CQI certificate was compliant with Vehicle Code section 11713.18. I ER 20-21. It did not rule upon the other deficiencies of the two-sided CQI certificate identified by Mr. Gonzales, namely that it lists items which are not component parts found on *any* vehicle and lists component parts not present on the subject Infiniti, meaning the document could not possibly be an accurate completed inspection report indicating all components inspected. *See* I ER 20-21; IV ER 680-82. Similarly, the district court did not hold placing the two-sided CQI certificate in the vehicle's glovebox was compliant with the statutory

18

requirement the completed inspection report be provided to a buyer "prior to sale." *See Id.*

## C. The District Court's Order to Show Cause

On October 11, 2013, the district court issued an Order to Show Cause ("OSC") why the case should not be remanded or dismissed for lack of subject matter jurisdiction. Dkt. 15. The district court expressed concern Appellants had not established by a preponderance of the evidence the amount in controversy exceeded $75,000. Appellants submitted a response to the OSC with supporting declarations and exhibits. Dkt. 18; *see also* II SER 84-358. Mr. Gonzales argued the case should be remanded, and submitted supporting declarations and exhibits. Dkt. 16; *see also* I SER 02-83.

On October 28, 2013, the district court held the amount in controversy required to confer subject matter jurisdiction was met. Dkt. No. 19; I SER 1.

## D. The Parties' Rule 26 Initial Disclosures

On October 24, 2013, nearly three months after the filing of the FAC in the instant action, Appellants' counsel sent Mr. Gonzales's counsel a letter regarding the *Brooks* case, and, for the first time, provided Mr. Gonzales's counsel with a copy of the one-sided CQI certificate and the email memorandum detailing the policy change. II ER 088.

In November 2013, the parties made their initial discovery disclosures for the instant case pursuant to FRCP 26. II ER 194. As part of the disclosure, Mr. Gonzales turned over copies of the two-sided CQI certificate and the one-sided CQI certificate which were provided to Mr. Gonzales. II ER 194-201. Mr. Gonzales's lead counsel failed to compare the documents produced with Mr. Gonzales's stated memory of the sales transaction.

Appellant CarMax, when making its own initial Rule 26 disclosure, did not disclose copies of, nor identify the existence of, the email/memo indicating there

19

had been a change in CarMax's policies; the one-sided CQI certificate (either generally or as provided to Mr. Gonzales); the two-sided CQI certificate for Mr. Gonzales's vehicle; or the CQI/VQI inspection report.[4] *See* III SER 359-526. Nor did CarMax disclose the existence of such documents in its supplemental disclosure made on March 11, 2014. *See* III SER 422.

On May 21, 2014, Appellants, for the first time in the instant case, produced a blank copy of the CQI/VQI checklist/inspection report Mr. Gonzales alleged he should have been provided per section 11713.18. IIII SER 517. However, like the prior two disclosures, this supplement failed to disclose, or identify the existence of, the email/memo indicating there had been a policy change, the one-sided CQI certificate (either generally, or as provided to Mr. Gonzales), and the two-sided CQI certificate for Mr. Gonzales's vehicle. *See* III SER 517-526.

## E.    The Second Amended Complaint

On November 25, 2013, Mr. Gonzales filed a Second Amended Complaint ("SAC"). IV ER 610. The SAC was signed by Mr. Gonzales's counsel on November 22, 2013. IV ER 638. The amendment was based upon the information available to Mr. Gonzales's counsel at the time. II ER 83, ¶15. Paragraph 18, which in the FAC alleged Mr. Gonzales "didn't receive the CarMax Certified Quality Inspection ("CQI") checklist[5] at any time" was amended in the SAC to include the language which is the focus of Appellants' ill-conceived appeal: "Plaintiff DID NOT, DID NOT, NEVER, EVER, EVER, get an inspection report

---

[4] Had Appellants' made a proper and complete Rule 26 disclosure, there is a significant chance that the confusion over the multiple versions of the CQI certificate could have been resolved early-on in the case.

[5] Herein referred to as the CQI/VQI checklist or CQI/VQI inspection report, the document which CarMax completes when performing the inspection and is later destroyed. Mr. Gonzales has consistently alleged this document is compliant with the demands of the Vehicle Code.

of any kind, EVER, EVER from CarMax. The law requires in very clear plain English that a 'completed inspection report' must be given 'prior to purchase.' Here, NO REPORT AT ALL was given."[6] IV ER 614, ¶18.

On November 26, 2013, a week after Mr. Gonzales made his truthful and complete discovery disclosures which contained the one-sided and two-sided CQI certificates, Appellants sent another form-style meet and confer letter regarding their intention to file a motion to dismiss and strike the SAC. III ER 359. Despite being included in the record, and drawn to the attention of this Court in Appellants' Opening Brief, *see* AOB at 14, the letter does not contain a single mention of the now vehemently complained of error in pleading. *See* III ER 359-61. The letter makes no mention of the existence of the CarMax policy change, the one-sided CQI certificate, or of it being provided to Mr. Gonzales. *See Id*. Moreover, despite Appellants' current allegation to the contrary, the letter does not "[explain] in detail why the CLRA claim has no merit." *See* AOB at 14. Indeed, Appellants' singular complaint in regard to the CLRA cause of action once again centered upon a lack of reference to CarMax's offer of correction.[7] *Compare* AOB at 14 *with* III ER 360.

On December 6, 2013, Appellants filed a motion to dismiss the SAC pursuant to FRCP 12(b)(6) for failure to state a claim. IV ER 604. Appellants

---

[6] This statement was, and is, true, as neither CQI "certificate" is a "completed inspection report," despite the holdings of the district court.

[7] On November 6, 2013, Mr. Gonzales wrote Appellants accepting CarMax's offer of correction. IV ER 514. The letter included up-to-date correction numbers, with supporting proof for incidental/consequential damages. *Id*. No response was received by Mr. Gonzales's counsel prior to filing of the SAC. On December 2, 2013, the letter was resent with updated figures, reflecting the additional monthly payments made by Mr. Gonzales. IV ER 530. On December 3, 2013, CarMax's General Counsel sent a letter to Mr. Gonzales arguing that Mr. Gonzales acceptance was a counter-offer. IV ER 533.

argued the claims in the SAC were premised upon the "notion" a completed inspection report must include the results of the inspection – a "notion" which the district court already ruled upon when dismissing the FAC.   III SER 541. Appellants further argued paragraph 18 of the SAC was ambiguous as to whether Mr. Gonzales received a document which he contended was not a completed inspection report, or whether he received no document at all. III SER 542.  Like with the meet and confer letter, at no point in the memorandum supporting the motion to dismiss did Appellants claim Mr. Gonzales made an error in pleading. *See* III SER 541-44.

Mr. Gonzales opposed the motion.  IV ER 589.  In doing so, he addressed the complained-of ambiguity in the pleading and made a good-faith, but ultimately incorrect, claim he never received "the generic checklist," meaning the two sided CQI certificate.  IV ER 591.  (In fact, Mr. Gonzales did receive the two-sided CQI certificate in his glovebox, after he purchased the vehicle, making it irrelevant to show compliance.) Again referring to the two-sided CQI certificate, Mr. Gonzales argued the "issue of the 'generic checklist' [was] still before the Court." IV ER 592. Mr. Gonzales reiterated his allegation the two-sided CQI certificate is not a completed inspection report indicating all the components inspected because it lists items which are not component parts installed on any vehicle, e.g. "exhaust," and the document cannot fairly be called "completed" because there is no vehicle-specific information which is added to the generic form to make it "complete." IV ER 592-593.  Mr. Gonzales's opposition claimed that in response to the decision in *Menefee,* "the generic list" (meaning the two-sided CQI certificate) is "usually provided in the post sales file of purchase documents handed over <u>after</u> the contract is signed," and reiterated his contention that, in the instant case, "nothing at all was given." IV ER 591.   No mention was made of the one-sided CQI certificate

because Mr. Gonzales and his counsel did not realize Mr. Gonzales received this document.

On December 30, 2013, the district court denied in part and granted in part Appellants' motion to dismiss the SAC. I ER 10. In ruling on the CLRA cause of action, the district court stated it previously found the two-sided CQI certificate constituted a "completed inspection report indicating all the components inspected," even though it had not made such a finding. The district court held the allegation Mr. Gonzales never received such a document sufficed to state a claim under the CLRA. I ER 12-13.

## F.     Mr. Gonzales's Truthful and Accurate Discovery Responses

On February 17, 2014, Appellants propounded their first set of written discovery upon Mr. Gonzales, including requests for admission. *See* III ER 226-43; IV ER 447-64. On April 4, 2014, Mr. Gonzales responded to Appellants' requests for admission. IV ER 543-68.

In his responses, Mr. Gonzales admitted he received the two-sided CQI certificate. IV RE 552. He denied he received it prior to sale. *Id.* Mr. Gonzales further admitted he received the one-sided CQI certificate, and received it prior to sale. IV RE 553. This series of discovery requests was the first time the term "one-sided CQI certificate," or any variation thereof, was used in this litigation, by either party. *See* III ER 150 (Complaint); III ER 172 (FAC); IV ER 665 (Opposition to Motion to Dismiss FAC); IV ER 610 (SAC); IV ER 589 (Opposition to Dismiss SAC).

On April 21, 2014, Mr. Gonzales was deposed by Appellants. II ER 211. Mr. Gonzales truthfully and accurately testified he received the two-sided CQI certificate. *See* II ER 212-219. He testified he first saw the two-sided CQI certificate, which was located in the glovebox of the vehicle, *after* he had signed his purchase contact and other sale documents. II ER 212:11-20, 213:14-21,

23

214:23-215:4, 218:11-219:23.  He was told this document would be in the glovebox by "the girl [he signed the documents with]," and that conversation occurred "at the very end." II ER 212:11-24.

Despite Appellants' attempt to distort the record on appeal, Mr. Gonzales did not testify he had any recollection he was provided with the one-sided CQI document prior to sale. *Compare* II ER 218:11-219:11 *with* AOB at 16.  (And he certainly did not testify such document "lists all of the components inspected.") *Compare* AOB at 16 *with* II ER 212-219.  Rather, Mr. Gonzales testified it was "possible" he received the one-sided CQI certificate "in the other paperwork that the girl gave [him]."[8]  II ER 218:24-219:1.  He further testified although he did not recall receiving or reviewing the CQI certificates before he started litigation, he must have received them because they were sent to Appellants in the Rule 26 disclosure.  II ER 219:2-11.

## G.    The Motion for Summary Judgment

On April 21, 2014, Appellants sent Mr. Gonzales a meet and confer letter regarding their intention to file a motion for summary judgment.  II ER 364.  For the first time, Appellants' raised the issue of the one-sided CQI certificate.  *See* II ER 364.  In the letter, Appellants asserted the only remaining factual issue was "whether Mr. Gonzales received a CQI certificate prior to sale." II ER 364.  They reasoned this to be the case because the district court explicitly held "the CQI certificate constituted a completed inspection report."  II ER 365; *see also* I ER 12.  Appellants asserted the holding contained in the Order meant if Mr. Gonzales "received *any* CQI certificate CarMax complied with the statute."  *Id.* (emphasis

---

[8] This folder of documents contains, among other things, the Buyer's copy of the executed sales contract, and is thus provided to consumers <u>after</u> the sales contract has been executed.  The period of time after a sales contract has been executed is not "prior to purchase."

original). Appellants concluded because Mr. Gonzales admitted he received the one-sided CQI certificate prior to sale he would be unable to prevail on a motion for summary judgment. II ER 366.

However, the one-sided CQI certificate was never before the Court during the motions to dismiss the FAC or SAC. *See* III ER 150 (Complaint); III ER 172 (FAC); IV ER 665 (Opposition to Motion to Dismiss FAC); IV ER 610 (SAC); IV ER 589 (Opposition to Dismiss SAC). All references to "*the*" CQI certificate are in the singular and refer to the only document known at the time to Mr. Gonzales's counsel (and, apparently, to Appellant's counsel, *see* II ER 81) to be sometimes provided by CarMax: the two-sided CQI certificate. *Id*. Indeed, as mentioned above, the term "one-sided CQI certificate" was never used by either of the parties until the discovery stage of litigation, *after* the district court's ruling on the SAC. *Id*. Because the district court never saw, nor was told of, the existence of the one-sided CQI certificate, it could not possibly have held it to be compliant with Vehicle Code section 11713.18. *See id.*

On May 1, 2014, Appellants filed their motion for summary judgment. III ER 397-99. In doing so, Appellants claimed Mr. Gonzales admitted he received both the one-sided and two-sided CQI certificates prior to sale. III ER 405:17-22.

Mr. Gonzales opposed the motion. III ER 372. Mr. Gonzales contended Appellants' assertion he admitted to receiving the two-sided CQI certificate prior to sale was "absurdly false," III ER 372, and opposed the motion on two grounds: (1) there was a triable issue of fact whether the one-sided CQI certificate, which Mr. Gonzales admitted to receiving prior to sale, is a completed inspection report indicating all components inspected; and (2) there was a triable issue of fact whether the two-sided CQI certificate, which the district court explicitly held to be compliant with the Vehicle Code and he previously claimed not to have received at all, was provided prior to sale. III ER 372-78.

25

On May 28, 2014, the district court granted Appellants' motion for summary judgment. I ER 3. Therein, the district court, for the first time, held there is no material difference between the one-sided CQI certificate and the two-sided CQI certificate and, moreover, both "qualify as a 'completed inspection report' for the purpose of Vehicle Code section 11713.18(a)(6)." I ER 8. The Court stated Mr. Gonzales received the two-sided CQI certificate "in the glovebox of the vehicle when he purchased it," I ER 06, but failed to explicitly hold whether this qualified as "prior to sale." *See* I ER 08-09. Mr. Gonzales appealed this order.

## H. The District Court Properly Denied Appellants' Motion for Fees

On June 11, 2014, Appellants filed a motion seeking their attorney's fees pursuant to California Civil Code section 1780(e). II ER 93-95. Mr. Gonzales opposed the motion. II ER 64.

On July 17, 2014, the district court (1) found Mr. Gonzales prosecuted his case in good faith; and (2) denied Appellants' motion for fees. I ER 1. The district court based its factual finding and corresponding denial of fees on two grounds. I ER 2. First, the district court noted there are no California Court of Appeal cases interpreting Vehicle Code section 11713.18 and at least one California Superior Court has found CarMax's CQI two-sided CQI certificate is not compliant with the Code. *Id*. The court noted its different holding does not mean Mr. Gonzales lacked a good faith belief in the claim's validity or brought the claim for an improper motive. *Id*. Second, the district court found after the motions to dismiss Mr. Gonzales still "had a good faith belief in the continuing validity of his claim based on the clause … requiring the report to be provided "prior to sale,' *an issue not decided by the Court's dismissal orders." Id*. (emphasis added). Accordingly, the district court denied Appellants' motion for fees. I ER 02.

## STANDARDS OF REVIEW

Generally, the Ninth Circuit presumes district court decisions are correct. *Parke v. Riley*, 506 U.S. 20, 29 (1992). Appellants have the burden of overcoming this presumption. *Id*.

## A. The District Court's Factual Finding Mr. Gonzales Prosecuted his Case with Subjective Good Faith

A district court's findings of fact are reviewed for clear error. FED. R. CIV. P. 52(a)(6); *Purcell v. Gonzales*, 549 U.S. 1, 5 (2006). This includes the factual determinations underlying an attorney fee award. *Berkla v. Corel Corp.*, 302 F.3d 909, 917 (9th Cir. 2002); *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1147-48 (9th Cir. 2001).

Under the "clearly erroneous" standard, this Court must accept the district court's decision unless it has a "definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993). District court factual findings will be affirmed when they are sufficiently comprehensive and pertinent to the issues to provide a basis for the court's decision. *Simeonoff v. Hiner*, 249 F.3d 883, 891 (9th Cir. 2001). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Elliott*, 322 F.3d 710, 715 (9th Cir. 2003). Thus, if the district court's account of the evidence is plausible in light of the record viewed in its entirety, this Court may not reverse, even though convinced it could have weighed the evidence differently. *Husain v. Olympic Airways*, 316 F3d 829, 835 (9th Cir. 2002).

## B. The District Court's Denial of Appellants' Fee Motion

A district court decision to award or deny attorney fees is reviewed under the abuse of discretion standard. *Berkla v. Corel Corp.*, 302 F.3d at 917; *Kona Enterprises, Inc., v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000) (award

under state law).  Whether the district court properly interpreted and applied the relevant state law is, however, reviewed *de novo*.  *Kona Enterprises, Inc.*, 229 F.3d at 883.  A district court abuses its discretion when it does not apply the correct law or rests its decision on a clearly erroneous finding of material fact.  *See Jeff D. v. Otter*, 643 F.3f 278 (9th Cir. 2011). The abuse of discretion standard requires this Court to uphold a district court determination that falls within a broad range of permissible conclusions.  *See Kode v. Carlson*, 596 F.3d 608, 612-13 (9th Cir. 2010) (per curiam).

## C.    The District Court's Determination of Subject Matter Jurisdiction

The Ninth Circuit reviews a district court's determination of subject matter jurisdiction de novo.  *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009). However, the factual findings underlying the district court's jurisdictional decision are reviewed under the clearly erroneous standard.  *Id*.

## ARGUMENTS

## A.    The District Court Lacked Subject-Matter Jurisdiction

In general, original jurisdiction exists when a claim (1) arises under the Constitution and laws of the United States, or (2) arises between citizens of different state and the amount in controversy exceeds $75,000.00.  *See* 28 U.S.C. §§ 1331, 1332.  "The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and entry of judgment."  *Arbaugh v. Y& H Corp.*, 546 U.S. 500, 506 (2006); *Galvez v. Kuhn*, 933 F.2d 773, 775 n. 4 (9th Cir. 1991) ("Defects in subject matter jurisdiction are nonwaivable and may be raised at any time, including on appeal.").  Federal Courts of Appeal have an ongoing obligation to ensure jurisdiction exists.  *California ex rel. Sacramento Metropolitan Air Quality Management Dist. v. U.S.*, 215 F.3d 1005, 1009 (9th Cir. 2000).

28

"It has long been the rule that jurisdiction in a diversity case is determined at the time of removal." *Am. Dental Indus., Inc. v. EAX Worldwide, Inc.*, 228 F. Supp. 2d 1155, 1157 (D. Or. 2002) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938)).

Following the district court's issuance of an order to show cause ("OSC") in the underlying case, Appellants contended a combination of amounts, including $49,000 in actual damages, $84,000 in Appellee's attorney fees (estimated through the conclusion of trial), $350,000 to implement the requested injunctive relief, and $25,000 in punitive damages satisfied the amount in controversy. See Dkt. 18 at 9. The district court held Appellants established by a preponderance of evidence the jurisdictional minimum was met. This finding was in clear error.

Actual damages in this case are equal to the sale price of the vehicle, plus any taxes and fees payable at purchase. *See Gomez v. CarMax Auto Superstores California, LLC*, No. 14-Vd-09019, slip op. at 3 (C.D. Cal. Apr. 30, 2015); *see also Lee v. CarMax Auto Superstores California, LLC,* No. 13-CV-7648, slip. Op at 2 (C.D. Cal. Apr. 27, 2014). According to the sale contract for the subject vehicle, the sale price plus taxes and fees totals $27,209.42. *See* III ER 274. In their response to the district court's OSC, Appellants inflated the actual damages to an amount almost double the proper measurement, $49,000. Dkt. 18 at 9. Thus, using the proper measure of actual damages of $27,209.42, a $47,790.59 deficit exists between the amount of actual damages and the amount in controversy required to establish diversity jurisdiction.

Appellant contended this deficit was removed once attorney fees are calculated. Appellant speculated *Appellee's* attorney fees and costs "should the matter proceed through trial" would be no less than $84,000. Dkt. 18-1 at 16-17. This contention is erroneous, and to the extent the district court relied upon such amounts to satisfy the amount in controversy it committed clear error.

While the Ninth Circuit has not definitively decided whether attorney's fees must be measured at the time of removal or whether possible future fees may form a part of the amount in controversy, s*ee Reames v. AB Car Rental Services, Inc.*, 899 F. Supp. 2d 1012, 1020 (D. Or. 2012) (collecting cases), the "nascent consensus" emerging within the circuit is that only attorney's fees incurred until removal count for diversity jurisdiction purposes. *See Gomez v. CarMax*, No. 14-CV-09019, slip op. at 3 (citing *Reames*, 899 F. Supp. 2d at 1020). "This is consistent with the general rules that the amount in controversy is determined at the time of removal and must not be too speculative." *Gomez v. CarMax*, No. 14-CV-09019, slip op. at 3 (citing *Lee v. CarMax*, 13-CV-7648, slip op. at 5; *Perez v. CarMax Auto Superstores California, LLC*, No. 13-CV-2886, 2014 WL 338838, at *2 (S.D. Cal. Jan. 28, 2014); *Salang v.CarMax Auto Superstores, LLC*, No. 13-CV-870, 2014 WL 334466, at *2 (S.D. Cal. Jan. 28, 2014); *Stelzer v. CarMax Auto Superstores Cal., LLC*, No. 13-CV-1788, 2013 WL 6795615, at *6 (S.D. Cal. Dec 20, 2013); *Wastier v. Schwan's Consumer Brands*, No. 07-CV-1594, 2007 WL 4277552, at *3 (S.D. Cal. Dec. 5, 2007)).

Here, the $84,000 in Appellee's estimated attorney fees were based on Appellants' calculation the case would advance through a trial on the merits. Decl. of Kurt A. Schlicter, Dkt 18-1 at 16-18. This estimation was improper and the court's reliance upon it was in clear error because it was not based on the amount of fees present at the time of removal and, further, was extremely speculative. *See Matheson v. Progressive Speciality Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003) ("[c]onclusory allegations as to the amount in controversy are insufficient"); *see also Reames*, 899 F. Supp. 2d at 1020. Indeed, the case did not advance through trial. While Appellee did not file a declaration detailing his attorney's fees through the time of removal, Appellee's attorneys, in cases with nearly identical factual scenarios have estimated their attorney's fees at the time of removal to be

$5,000.  *See Gomez*, No. 14-CV-09019, slip op. at 3-4.  Such an amount would similarly be a reasonable estimate of attorney's fees at the time of removal in this case.  Including the $5,000 in attorney's fees which were present at the time of removal brings the total amount in controversy to $32,209.42 – an amount which is still $42,790.59 short of achieving the required amount in controversy.

Appellant further contended punitive damages of $25,000 would increase the amount in controversy to more than $75,000.  To the extent the district court relied upon this amount in achieving the amount in controversy it committed clear error.

When punitive damages form a significant portion of a putative amount in controversy, the court should "scrutinize a claim … more closely than a claim of actual damages to ensure Congress's limits on diversity jurisdiction are properly observed."  *Lange v. State Farm Mut. Auto Ins. Co.,* No. 08-CV-1466, 2009 WL 322835, at *1 (C.D. Cal. Feb. 9, 2009) (quoting *McCorkindale v. Am. Home Assurance Co.*, 909 F. Supp. 646, 655 (N.D. Iowa 1995)).  Accordingly, a removing defendant relying on punitive damages to establish the amount in controversy "must present evidence that punitive damages will more likely than not exceed the amount needed to increase the amount in controversy to [more than] $75,000."  *Gomez v. CarMax*, No. 14-CV-09019, slip op. at 4 (quoting *Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004)).  Courts in the Ninth Circuit have commonly looked to recovery in similar cases to determine whether a defendant has met this burden.  *See*, *e.g.*, *Geller v. Hai Ngoc Duong*, No. 10-CV-1876, 2010 WL 5089018, at *2 (S.D. Cal. Dec. 7, 2010) (remanding after defendants provided no evidence of analogous case); *Thomas v. Standard Ins. Co.*, No. 09-CV-02121, 2010 WL 994507, at *3 (D. Ariz. Mar. 17, 2010) (considering analogous jury verdicts); *Nguyen v. Hartford Cas. Ins. Co.*, No. 06-CV-2541, 2007 WL 2206903, at *3 (D. Ariz. July 30, 2007) (finding "the mere possibility of a

31

punitive damages award insufficient" where defendant presented no evidence of jury verdicts in analogous cases or similar evidence that punitive damages would "more likely than not exceed the amount needed"); *see also Gomez v. CarMax*, No. 14-CV-09019, slip op. at 4.

Here, Appellants did not establish punitive damages were likely to be awarded in this action; indeed, Appellants did not cite to even one factually similar case were punitive damages were awarded. *See* Dkt. 18. Additionally, Appellants argued in their motion to strike that Mr. Gonzales's request for punitive damages was not supported by the SAC's allegations. Dkt. 24-1 at 23-24. This significantly undermines Appellants' reliance on punitive damages to satisfy the amount in controversy. See *Gomez v. CarMax*, No. 14-CV-09019, slip op. at 4. Accordingly, this Court should decline to include punitive damages in its calculation of the amount in controversy.

Finally, Appellants based their calculations of the amount in controversy on Appellee's requested injunctive relief. Appellants estimated the cost of implementing this injunction to be $350,000. This calculation is patently absurd. It is also, as other courts have stated based upon near identical facts: "speculative," "greatly overestimated," and "border[ing] on preposterous." *See Stelze*r, 2013 WL 6795615, at *6; *Perez*, 2014 WL 338838, at *2; *Salang*, 2014 WL 334466, at *2. As these courts sagely noted, Appellants' estimate of the injunction's value is grossly overstated. The cost of implementing an injunction would likely not exceed a few thousand dollars because CarMax already collects the information it would be ordered to provide to its customers, and collects it in such a form which could easily be photocopied and handed to those customers. *Gomez v. CarMax*, No. 14-CV-09019, slip op. at 5.

Because the amount in controversy necessary to confer the district court with original jurisdiction over the underlying case was not present at the time of

removal, the district court committed clear error in finding the presence of federal subject matter jurisdiction. The appeal should be dismissed as moot and the case remanded to state court.

## B.     The District Court's Finding Mr. Gonzales Prosecuted the Case with Subjective Good Faith was Not Erroneous

Good faith, or its absence, involves a factual inquiry into the plaintiff's subjective state of mind." *Corbett v. Hayward Dodge, Inc.*, 119 Cal.App.4th 915, 923 (2004); *Knight v. City of Capitola*, 4 Cal.App.4th 918, 932 (1992). "Encompassed within the legal definition of good faith is the equitable principle of fairness." *Id*. at 923-24 (*quoting Carroll v. State of California*, 217 Cal.App.3d 134, 141 (1990)).  "The phrase 'good faith' 'has a well-defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation.'" *Mueller v. Macban*, 62 Cal.App.3d 258, 282 (1976) (citing *People v Nunn*, 46 Cal.2d 460,468 (1956); *Efron v. Kalmanovitz*, 246 Cal.App.2d 187, 192 (1967)).

The questions essential to determining the existence of good faith are: "Did [the plaintiff] believe the action was valid? What was his or her purpose in pursuing it?" *Knight*, 4 Cal.App.4th at 932.  "[E]vidence of an improper motive may be established by circumstances such as evidence of personal animus or purposeful use of dilatory tactics for the purpose of delay."  *Corbett*, 119 Cal.App.4th at 926.  In the face of evidence that a tactic or action had no merit, a court has the discretion to infer a plaintiff knew it lacked merit and pursued the action for "some ulterior motive."  *Id*. (citing *Summers v. City of Cathedral*, 225 Cal.App.3d 1047, 1073 (1990)). "However, it is within a court's discretion not to draw that inference if convinced the party was acting in the good faith belief the

action was meritorious." *Holt v. Kormann*, 2012 WL 5829864 at *7 (C.D. Cal. Nov. 15, 2012) (citing *Corbett*, 119 Cal.App.4th at 926).

At all times, during all stages of Mr. Gonzales's prosecution of the underlying CLRA cause of action, Mr. Gonzales and his counsel maintained the subjective good faith belief his case was meritorious. Appellants' entire appeal to this Court is based upon the existence of a good faith mistake in drafting the SAC and the Opposition to dismiss the pleading; a mistake which Appellee realized, admitting to making, and corrected during the discovery process. Had Appellants had fulfilled their duty to make a proper Rule 26 disclosure which contained a copy or description of all the documents they would use to support its defenses, *see* FRCP 26(a), there is a significant chance the confusion over the one-sided CQI certificate could have been resolved early-on in the case.

Appellants claim they "proceeded with discovery targeted to show the allegations in the SAC were false." AOB at 26. However, if Appellants had properly disclosed the existence of the one-sided CQI certificate in their discovery disclosures, or counsel explained its purported purpose in a meet and confer letter, or, at the very least, Appellants mentioned the existence of the document in their motion to dismiss the SAC, such discovery would have been unnecessary because Mr. Gonzales would have properly amended his pleadings. However, Appellants did none of the above. Appellants, at all times in supporting their motion to dismiss the SAC, refer to the two-sided CQI certificate in the singular. *See* III SER 543-54. In the confusion of the numerous near-identical cases being litigated between Appellants' counsel and Mr. Gonzales's counsel, Appellants apparently made the same errors and held the same misunderstanding as Mr. Gonzales and his counsel. If Appellants had documents in their possession which indicated Mr. Gonzales had made an error in pleading, the proper time to bring such facts to light would have been in the November 26, 2013 meet and confer letter regarding their

34

intention to move to dismiss the SAC. Waiting until after Mr. Gonzales had vigorously opposed the motion to bring to light his error in pleading, and later claiming such error was made in a bad faith attempt to lie to the court, is the epitome of a "gotcha" litigation tactic. At any rate, Appellants cannot now fairly complain Mr. Gonzales acted in bad faith when they too failed to recognize the incongruity between the discovery disclosure and the pleading.

### 1. Mr. Gonzales Did Not Purposefully Deceive the Court to Pass the Pleadings Stage: An SAC with Accurate Facts Would Have Survived a Motion to Dismiss

Appellants contend the only plausible explanation for Mr. Gonzales's mistake in pleading the SAC is that it was a deliberate attempt to defraud the district court to avoid dismissal in the pleadings stage, and thus done in bad faith. See AOB at 25-26.

However, this is not the case. If Mr. Gonzales had pleaded the correct facts in the SAC it would still have survived Appellants' 12(b)(6) motion to dismiss because he could have (for the first time) pleaded the noncompliance of the one-sided CQI certificate and also alleged neither the one-sided nor two-sided CQI certificate was received prior to sale. Mr. Gonzales did not need to plead he had not received any CQI certificate at all to survive a motion to dismiss; his (accurate) pleading that he received the two-sided CQI certificate, but did not receive it before sale also would have been sufficient. Further, had Mr. Gonzales or his counsel realized he had received the one-sided CQI certificate, the pleading could have been amended to reflect that receiving something in a stack of documents after signing a contract is not "before sale," and further pleaded the one-sided CQI certificate is also not an inspection report in compliance with California law. Either way, on the issue of "prior to sale," the district court would have properly denied the motion to dismiss. Appellants' contention Mr. Gonzales (or his counsel)

35

purposefully lied to the district court about not receiving any CQI certificate because doing so was the only way to avoid having the SAC dismissed is a work of pure fiction not supported by the facts.

Moreover, even had he not survived the pleadings stage, Mr. Gonzales would have filed the same appeal, on nearly the same grounds as his current appeal on the merits, because Mr. Gonzales strongly believes in the merits of his case: neither CQI certificate is a completed inspection report indicating all the components inspected, as required by Vehicle Code section 11713.18.

Appellants, neither in their motion for fees nor in the instant appeal, have identified any other plausible ulterior motive Mr. Gonzales, or his counsel, might have for "lying" to advance a claim they allegedly knew to be unmeritorious. As discussed above, Mr. Gonzales did not need to lie to survive the pleading stage; if timely recognized Mr. Gonzales could have accurately pleaded the noncompliance of the one-sided CQI certificate with the Vehicle Code and alleged neither CQI certificate was received prior to sale. Moreover, Mr. Gonzales's attorneys work on a contingency basis, and receive no payment unless they prevail in the case. Unlike defense counsel who typically are paid in advance and work off a retainer, Mr. Gonzales's counsel have no economic incentive to be engaged in unmeritorious litigation, or to engage in dilatory tactics. Neither Mr. Gonzales, nor his counsel, had any ulterior motives behind any of their actions in prosecuting the case.

The record on appeal provides evidence to support an inference it was not necessary for Mr. Gonzales to deceive the district court in order to pass the pleadings stage, and Appellants have presented no other possible "ulterior motive" that Mr. Gonzales or his counsel might have harbored or sought to advance when filing the SAC. Thus, the district court's factual finding Mr. Gonzales prosecuted his case with subjective good faith is not implausible in light of the record.

36

Accordingly, this Court must affirm the district court's factual finding Mr. Gonzales prosecuted his case in good faith.

>    **2.      Appellants Repeatedly Misstate the Basis of Mr. Gonzales's Opposition to the Motion for Summary Judgment**

Mr. Gonzales opposed Appellant's motion for summary judgment with the subjective good faith belief in the merits of his case and that there were remaining triable issues of material fact to be decided by a finder of fact at trial.

Despite Appellants' repeated egregious efforts made in their opening brief to mischaracterize and distort the record on appeal, Mr. Gonzales did not *"[conclusively admit] the sole factual basis for his remaining claims for was false*," AOB at 27, and he did not allege "*false facts … in opposing summary judgment,*" AOB at 30, nor did his opposition to summary judgment "*ignore his sworn discovery responses and deposition testimony,*" AOB at 34,  nor did he "*assert knowingly false allegations and [rely] on them to oppose … summary judgment*," AOB at 42, nor did he "*oppose summary judgment … [having] already conclusively admitted the dispositive facts entitling defendants to judgment.*" AOB at 27- 28.  Appellants who live in glass houses should not throw stones.  It is very disturbing to see Appellants, especially those which failed to make proper initial discovery disclosures and then later claim an opposing party has acted in bad faith for making an honest mistake of fact, play so fast-and-loose with their representation of the record.

Indeed, as the record clearly establishes, it was *Appellants* who "ignored Mr. Gonzales's sworn discovery responses and deposition testimony," "alleged false facts," and based their motion for summary judgment on a false factual basis. *Compare* III ER405:17-22, *with* III ER 433-440 *and* III ER 331-332 (RFA Nos. 25-29).  In its memorandum supporting the motion, Appellants falsely stated Mr. Gonzales "unequivocally admitted under oath he received two versions of

CarMax's "CQI Certificate" (Ex. 7-8) *prior to sale*." III ER 405:17-22; *see also* III ER 373 (italics added). In opposing the motion, Mr. Gonzales rightfully called this factual assertion "patently absurd." III ER 372. It remains so today.

As an even cursory review of the record will establish, once the case progressed to the summary judgment stage, the parties had cleared up the confusion regarding the existence of the unrecognized (by Mr. Gonzales) and undisclosed (by Appellants) one-sided CQI certificate and the amended CarMax policy. In answering Appellants' requests for admission, Mr. Gonzales admitted to receiving the one-sided CQI certificate prior to sale. IV ER 553. He further corrected his previously pleaded claim he had not received a copy of the two-sided CQI certificate, but *denied he received it prior to sale*. IV ER 552. During his deposition, Mr. Gonzales stated he first saw the two-sided CQI certificate in the glove box of the vehicle *after* he signed the purchase documents. See III ER 434:14-21. The aforementioned are the facts which Mr. Gonzales (but not Appellants) used when arguing the summary judgment motion. *Compare* III ER 372-78 *with* III ER 405.

Mr. Gonzales and his counsel believed (and still do believe) the two-sided CQI certificate was not provided "prior to sale." Using the correct facts which came to light during discovery, Mr. Gonzales opposed summary judgment on two narrow grounds: (1) the wholly generic one-sided CQI document Mr. Gonzales admitted to receiving prior to sale, which is not identical to the two-sided CQI certificate,[9] was never before the trial court and thus could not have been held to be compliant with Vehicle Code section 11713.18; and (2) there was a triable issue of

---

[9] The one-sided CQI certificate is devoid of *any* vehicle-specific information. It does not even contain a vehicle stock number. It is not signed by any CarMax employee. It is a wholly generic document –even more generic than the two-sided certificate—which is given in identical form to every consumer. *Compare* III ER 441 *with* III ER 442-43.

fact concerning when Mr. Gonzales received the two-sided CQI certificate and if that was "prior to sale." III ER 372-78.

The discovery admissions of Mr. Gonzales had the unquestionable effect of narrowing the issues before the court on summary judgment. However, a case with narrow and limited issues of disputed material fact is not one which is without merit, especially in an area of law which is changing and when a plaintiff is advancing a new legal theory. *See Corbett*, 119 Cal.App.4th at 928. Mr. Gonzales, and his counsel, sincerely believed (and still do believe) the one-sided CQI certificate, which differs from the two-sided CQI certificate, was not compliant with Vehicle Code section 11713.18.

Appellants would have this Court believe Mr. Gonzales fully and vigorously prosecuting the merits of his case and allowing the district court an opportunity to rule upon each and every one of his allegations regarding CarMax's noncompliance with Vehicle Code section 11713.18 amounts to bad faith. This is an obscene position to adopt. Mr. Gonzales was not required to abandon his case because his discovery responses narrowed the issues on which he could oppose summary judgment. At the summary judgment stage, issues of both law and material fact existed. Mr. Gonzales was entitled to fully prosecute his case and receive a final judicial ruling upon his remaining allegations.

Mr. Gonzales (and his counsel) at all times maintained a subjective good faith belief in the merits of his case. While mistakes were made, they were honest mistakes which were timely corrected. Despite Appellants' baseless and shameful assertions to the contrary, the record establishes Mr. Gonzales opposed the motion for summary judgment by arguing triable issues of fact remained, and (unlike Appellants) did so using the actual facts learned in discovery. This is not evidence of bad faith.

Because the record contains plausible support for the district court's finding Mr. Gonzales continued to prosecute his case based upon the sincerely held belief that the "prior to sale" issue was not resolved by the district court's prior rulings, the district court's factual finding was not clearly erroneous. Accordingly, this Court must affirm the factual finding Mr. Gonzales continued the prosecution of his case in good faith.

**C.    Even Upon a Factual Finding of Subjective Bad Faith, the District Court Had the Discretion to Deny Appellants' Fee Motion**

The remedies provision of the Consumers Legal Remedies Act, California Civil Code section 1780, subdivision (e), provides a trial court *shall* award costs and attorney's fees to a prevailing plaintiff who has filed pursuant to the CLRA. Cal. Civ. Code §1780(e) (emphasis added). In sharp contrast, the section provides, upon a finding of bad faith, a trial court *may* award reasonable attorney's fees and costs to a prevailing defendant. *Id.* Thus, unlike with a prevailing plaintiff, the trial court always has the discretion to deny a prevailing defendant's motion for attorney's fees – even upon a finding of subjective bad faith. *See* Cal. Civ. Code §1780(e); *see also* WISEMAN & REESE, CAL. PRACTICE GUIDE: CIVIL PROC. BEFORE TRIAL CLAIMS & DEFENSES (The Rutter Group) ¶14:560-14:562.

This is not a statutory scheme which can fairly be described as "favoring" attorney's fees awards to a prevailing defendant, even upon a finding of bad faith. *See* AOB at 20. The only case Appellants cite to in support of their contention that awarding of attorney's fees to prevailing defendants is "favored" under California law is a case interpreting the requirements to bring a tort action for malicious prosecution, and has absolutely no bearing on the awarding of fees to a prevailing defendant under Civil Code section 1780(e). *Compare* AOB at 20-21 *with Sheldon Co v. Albert & Oliker*, 47 Cal.3d 863 (1989).

40

Further, *Sheldon* is off-point to the instant scenario because it deals with the appropriate way to seek redress for defending against *meritless* litigation. Meritless is another way of saying frivolous. Cal. Civ. Proc Code § 128.5(b)(2); *see also Corbett*, 119 Cal.App.4th at 922. Whether a case is frivolous is decided by an objective standard: any reasonable attorney would agree the case is totally and completely without merit. *Corbett*, 119 Cal.App.4th at 922 (citations omitted). However, Civil Code section 1780, subdivision (d) "does not include 'frivolous' actions as a consideration for awarding attorney fees to prevailing defendants in CLRA actions." *Corbett*, 119 Cal.App.4th at 923. The CLRA allows for the imposition of fees only upon a finding of bad faith, which requires a factual inquiry into the plaintiff's *subjective state of mind* – his beliefs and motivations for bringing the case. *Id.* This is because the CLRA is designed to *encourage* consumers' prosecutions of unfair and deceptive business practices. *Corbett,* 119 Cal.App.4th at 924.

Appellants' reliance on *580 Folsom Assocs. v. Prometheus Dev. Co.*, 223 Cal.App.3d 1 (1990) suffers from the same problem: *580 Folsom* deals with the imposition of sanctions under Code of Civil Procedure section 128.5, a statute which allows imposition of sanctions for expenses incurred as result of "bad-faith actions <u>or</u> tactics that are frivolous <u>or</u> solely intended to cause unnecessary delay." Cal. Civ. Proc. § 128.5 (emphasis added). Despite Appellants' assertion to the contrary, CCP section 128.5 is not analogous to Civil Code section 1780, subdivision (e). *See* AOB at 31. In addition, the *580 Folsom* Court appears to have applied a disjunctive test—applying an objective standard of frivolous <u>or</u> the subjective standard of bad faith—to issue sanctions under CCP §128.5. *See 580 Folsom Assocs v. Prometheus Dev. Co.,* 223 Cal.App.3d 1, 22 (1990) (holding "a complete lack of evidence to substantiate key allegations of the cross-complaint …

41

is sufficient ground for imposition of sanctions for the filing of a *frivolous* pleading) (emphasis added); *see also Corbett*, 119 Cal.App.4th at 922-23.

Further, the facts in *580 Folsom* are not remotely akin to those in the instant matter. First, unlike here, the *580 Folsom* Court was asked to uphold a trial court's factual finding of bad faith, not to reverse a finding of good faith. The Court of Appeals was not tasked with setting precedent about when a court must find bad faith, merely with determining if a court was within its discretion to make such a finding. *See 580 Folsom*, 223 Cal.App.3d at 19-20. Appellants again exhibit misunderstanding of the proper standard of review on appeal. Second, in *580 Folsom*, the sanctioned counsel, Brobeck, attempted to bury the trial court in irrelevant paperwork to avoid an adverse ruling on summary judgment; he submitted over 800 pages of evidence to the court, large portions of which did not support the facts for which they are cited. *Id.* at 24, 25-26. In contrast, Mr. Gonzales's opposition to summary judgment was extremely short, narrow, and focused. He (unlike Appellants, *see supra*) accurately used the facts disclosed during the discovery stage to oppose Appellants' motion.

In addition, Mr. Gonzales has been unable to locate, and Appellants have not cited to, a single case in which a Court of Appeal, California or federal, has held a lower court abused its discretion by *denying* a prevailing defendants' motion for attorney's fees, under the CLRA or any other fee-granting statute which has a prerequisite finding of subjective bad faith.

Here, the prerequisite factual finding which triggers the discretion to award a prevailing defendant post-judgment attorney's fees was not present; the district court properly found Mr. Gonzales prosecuted and maintained a subjective good faith belief in the merits of his action. As such, the district court did not have the ability to grant Appellants' fees. At most, assuming this Court agrees with Appellants that the district court committed clear error when it found Mr. Gonzales

prosecuted his case with subjective good faith, this Court may remand to the district court with a direction to reconsider whether, upon such a finding, it would decide to award fees. But even in that scenario, the district court need not award fees; it is within its sound discretion even upon a finding of bad faith to deny prevailing defendant's motion for fees.

Because the district court properly applied the law and did not rest its discretion upon a clearly erroneous factual finding, *see supra*, this Court must affirm the decision of the district court to deny Appellants' attorney's fees.

## D. The District Court Provided Sufficient Justification for Denying Appellants' Motion for Attorney's Fees

Lastly, Appellants make the bizarre argument that "the district court failed to provide sufficient reasons for its denial [of attorney's fees] as required by FRCP 52(a)." AOB at 44.

However, the reason the district court denied Appellants' fee motion is crystal clear: it found Mr. Gonzales prosecuted his case in good faith. As such, as noted above, it had to deny the motion. The district court gave multiple reasons it reached this factual finding. The first reason was in the absence of contrary appellate authority, and considering at least one California trial court has ruled CarMax's two-sided CQI certificate is not compliant with the Vehicle Code, Appellants did not establish Mr. Gonzales, generally, did not have a good faith belief in the merits of his case. *See* I ER 02. Second, the district court, obviously relying on the record, stated the issue of "prior to sale," had not been decided by its previous dismissal orders and Mr. Gonzales could have (and did) proceed through the summary judgment stage on this issue. *See* I ER 02.

Appellants may have wished for a lengthier Order from the Court. However, just as Appellants' displeasure with Mr. Gonzales's choice to fully prosecute all aspects of his claim does not mean he acted in subjective bad faith,

43

their desire the Court issue a lengthier denial of their motion does not mean the district court failed to give a basis for its decision.

**E.      This Appeal Will be Mooted by Mr. Gonzales's Appeal on the Merits**

Mr. Gonzales, maintaining a good faith belief in the merits of his case, has appealed the district court's granting of summary judgment and rulings on the prior motions.  Mr. Gonzales fully expects to prevail on the appeal.

An appellate victory for Mr. Gonzales will ultimately change which party prevailed in the underlying litigation.  As such, any decision in this matter should be stayed until the appeal on the merits is heard and decided by this Court.

## CONCLUSION

For the aforementioned reasons this Court lacks subject matter jurisdiction. Should this Court find subject matter jurisdiction was established, this Court should, for the aforementioned reasons, stay the case pending Mr. Gonzales's appeal on the merits, affirm the factual finding of the district court because it was not made in clear error, and further affirm its decision to deny Appellants' motion for attorney's fees as a properly within its discretion.

Dated:  May 21, 2015                         Respectfully Submitted,

                                                          ROSNER, BARRY & BABBITT LLP


                                                          By:   /s/ Hallen D. Rosner
                                                                   Hallen D. Rosner
                                                                   Attorney for Appellee

44

## **STATEMENT OF RELATED CASE**

Plaintiff-Appellee Travis Gonzales is aware of the following related case pending before this Court:

Arising from the same underlying case, here Respondent Travis Z. Gonzales has appealed from the district court's orders on the motions to dismiss and the district court's order granting summary judgment in favor of Appellants CarMax Auto Superstores, LLC and Santander Consumer USA, Inc. Mr. Gonzalez's appeal has been assigned Docket No. 14-56842 and bears the same name as the instant appeal. Briefing is pending.

Dated: May 21, 2015                     By:   /s/  Hallen D. Rosner

                                                       Hallen D. Rosner

## <u>CERTIFICATE OF COMPLIANCE</u>
### <u>(Federal Rules of Appellate Procedure 32(a)(7)(C)</u>

Counsel of Record hereby certifies that pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Ninth Circuit Rule 32-1, the foregoing Appellee's Reply Brief is produced using 14-point Times New Roman type and contains approximately 12,120 words, excluding the portions exempted by Ninth Circuit Rule 32(a)(7)(B). Counsel relies on the word-count feature of the word processing system used to prepare this Brief.

Dated: May 21, 2015                       By:   /s/  Hallen D. Rosner
                                                Hallen D. Rosner